**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

CANDICE GAIR, *on behalf of herself and all others similarly situated*,

Plaintiff,

v.

GREAT STAR TOOLS USA, INC.,

Defendant.

No. 4:21-CV-00976

(Chief Judge Brann)

**MEMORANDUM OPINION**

**SEPTEMBER 13, 2023**

In 2020, Shop-Vac Corporation ("Shop-Vac") laid off most of its staff, allegedly without providing adequate legal notice. Candice Gair seeks to certify a class that would include those former employees. Great Star Tools USA, Inc. ("Great Star") opposes certification on the ground that many of the proposed class members may be subject to arbitration agreements that would prohibit those members from bringing this action and, because Gair is not subject to such a defense, she cannot adequately represent those class members. However, because Gair proposes an adequate subclass to represent the interests of employees subject to such a defense, and the remainder of Federal Rule of Civil Procedure 23's requirements are satisfied, the proposed class and subclass will be certified.

## I.    BACKGROUND

In 2021, Gair, on behalf of herself on all similarly situated individuals, filed a complaint—which was later amended—against Shop-Vac[1] and Great Star, raising a single claim for a violation of the Worker Adjustment and Retraining Notification Act[2] ("WARN Act").[3] Gair avers that she and approximately 400 other employees of Shop-Vac were terminated around September 15, 2020.[4] Those employees were terminated without notice, severance pay, or health care coverage.[5]

In late December 2020, Great Star, a subsidiary of a Chinese company named Hangzhou Great Star Industrial Co., LLC, acquired substantially all of Shop-Vac's assets.[6] Great Star then reopened Shop-Vac's shuttered Williamsport, Pennsylvania manufacturing plant and rehired hundreds of Shop-Vac's former employees.[7] Upon rehiring those employees, as a condition of employment for Great Star, the rehired individuals were required sign a contract that contained a dispute resolution policy that mandated arbitration of any and all disputes between Great Star and its employees (the "Arbitration Agreement").[8]

---

[1]   Shop-Vac Corporation (properly named as SV Wind-Down Corporation) was later dismissed from this action. Doc. 56.

[2]   29 U.S.C. § 2101, *et seq.*

[3]   Docs. 1, 21.

[4]   Doc. 21 ¶¶ 1-2.

[5]   *Id.* ¶ 22.

[6]   *Id.* ¶¶ 25, 26, 29, 30.

[7]   *Id.* ¶¶ 28, 32, 37.

[8]   Doc. 66 at 6; Doc. 66-1 at 6-14.

It is undisputed that Gair was not rehired and, therefore, is not bound by the Arbitration Agreement. It is estimated that 436 Shop-Vac employees were terminated in September 2020, and that 206 employees were hired subsequently by Great Star and signed the Arbitration Agreement.[9]

Gair has now filed a motion to certify a class pursuant to Federal Rule of Civil Procedure 23.[10] Gair asserts that certification is appropriate because there are estimated to be 400 members of the proposed class, questions of law and fact are common to all class members—as they were terminated at around the same time as part of a common plan—and any legal issues surrounding the WARN Act would be the same for all class members, and Gair would adequately protect the interests of the class.[11] Gair further argues that the proposed class satisfies Fed. R. Civ. P. 23(b)(3), as class questions predominate over individual questions, and a class action is superior to other methods of adjudication, since many of the claims are small and cannot or will not be brought individually.[12]

Great Star responds that the conditions for class certification have not been met.[13] Specifically, Great Star argues that Gair's claims are not typical of the proposed class's claims, as many class members may be bound by the Arbitration Agreement and, because Gair is not, she will have no interest in defending against

---

[9]   Doc. 69 at 4 n.3.
[10]  Doc. 47.
[11]  Doc. 48 at 9-12.
[12]  *Id.* at 13-16.
[13]  Doc. 66.

the enforceability of the Arbitration Agreement.[14] For similar reasons, Great Star contends that Gair cannot adequately represent individuals who signed the Arbitration Agreement.[15]

In her reply brief, Gair responds that, to the extent that she is not an adequate representative for proposed class members who signed the Arbitration Agreement, Rachael Berry, who signed such an agreement, is willing to act as a representative for a subclass of former employees who signed the Arbitration Agreement.[16] Gair therefore asserts that commonality and typicality—as well as the other requirements for class certification—are met, and her motion should be granted.[17]

Gair's motion for class certification is now ripe for disposition. For the following reasons, the motion will be granted.

## II.   DISCUSSION

"In considering whether certification is proper, [this Court] refrain[s] from conducting a preliminary inquiry into the merits."[18] "At the same time, [the Court] must carefully examine the factual and legal allegations."[19] Rule 23 certification is appropriate

> only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or

---

[14]   *Id.* at 9-13.
[15]   *Id.* at 13-15.
[16]   Doc. 69 at 2-3.
[17]   *Id.* at 3-8.
[18]   *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 140 (3d Cir. 1998).
[19]   *Id.*

defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.[20]

Plaintiffs must further meet one of the enumerated instances in Rule 23(b), in this case, "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[21] "[T]he party seeking to certify a class bears the burden of affirmatively demonstrating by a preponderance of the evidence her compliance with the requirements of Rule 23."[22]

## A.    Rule 23(a) Requirements

First, Gair must establish the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. "The requirements of Rule 23(a) are meant to assure both that class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances."[23] The Court concludes that Gair has satisfied these requirements.

---

[20]  Fed. R. Civ. P. 23(a).

[21]  Fed. R. Civ. P. 23(b)(3).

[22]  *Russell v. Educ. Comm'n for Foreign Med. Graduates*, 15 F.4th 259, 265 (3d Cir. 2021) (internal quotation marks omitted).

[23]  *Barnes*, 161 F.3d at 140.

### 1.    Numerosity

"To begin, proper class certification requires a finding of numerosity, or that the putative class is 'so numerous that joinder of all members is impracticable.'"[24] "Impracticable does not mean impossible and refers rather to the difficulties of achieving joinder. This calls for an inherently fact-based analysis that requires a district court judge to take into account the context of the particular case, thereby providing district courts considerable discretion in making numerosity determinations."[25]

"While no minimum number of plaintiffs is required to maintain a suit as a class action, [the Third Circuit] has said that generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."[26] The Third Circuit has further "recognized the general rule that 'a class of 20 or fewer is usually insufficiently numerous . . . while classes with between 21 and 40 members are given varying treatment.'"[27] In determining the potential size of a class, courts must be mindful that "mere speculation as to the number of class members—even if such speculation is a bet worth making—cannot

---

[24]  *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001) (quoting Fed. R. Civ. P. 23(a)(1)).

[25]  *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 249 (3d Cir. 2016) (internal citations quotation marks omitted).

[26]  *Id.* at 249-50 (brackets and internal quotation marks omitted).

[27]  *Id.* at 250 (quoting 5 James Wm. Moore, et al., *Moore's Federal Practice* § 23.22 (brackets and ellipses omitted)).

support a finding of numerosity."[28] Consequently, "where a putative class is some subset of a larger pool, the trial court may not infer numerosity from the number in the larger pool alone."[29]

Here, the estimated class size is well in excess of the general threshold required for class certification. Gair estimates that the total number of former Shop-Vac employees who were fired and would qualify under the proposed class definition exceed 400—an estimate that Great Star does not contest.[30] In her reply brief, Gair more specifically estimates a class of approximately 436 individuals, with 206 of those employees potentially subject to the Arbitration Agreement, and therefore falling within the proposed subclass.[31] This number is sufficient to satisfy Rule 23's numerosity requirement.

Furthermore, it does not appear to the Court at this stage in the proceedings that joinder of more than 400 individuals would be practical since Gair asserts that many potential claims—including hers—are for relatively small amounts,[32] indicating that these potential class members would not have the "ability and motivation to litigate as joined plaintiffs."[33] In sum, the Court finds that there is

---

[28] *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 486 (3d Cir. 2018) (brackets and internal quotation marks omitted).

[29] *Id.* (internal quotation marks omitted).

[30] Doc. 48 at 10; *see* Doc. 66.

[31] Doc. 69 at 4 n.3.

[32] Doc. 48 at 15; Doc. 48-1 at 4.

[33] *See In re Modafinil Antitrust Litig.*, 837 F.3d at 253 (setting forth non-exhaustive list of considerations that are indicative of whether joinder is practical).

sufficient evidence that the proposed class satisfies the numerosity requirement of Rule 23.

### 2.  Commonality and Typicality

The Court further concludes that Gair has demonstrated commonality and typicality. The Third Circuit has stated that "[t]he concepts of commonality and typicality are broadly defined and tend to merge."[34] As to commonality, plaintiffs must demonstrate "that 'there are questions of law or fact common to the class.'"[35] "Commonality does not require an identity of claims or facts among class members; instead, the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."[36]

Moreover, "in a properly certified class, the claims of the class representatives must be typical of the class as a whole."[37] "In considering the typicality issue, the district court must determine whether the named plaintiffs' individual circumstances are markedly different or the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based."[38] "This criteria does not require that all putative class members share identical claims. Indeed, so long as the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of

---

[34] *Barnes*, 161 F.3d at 141 (internal quotation marks omitted).
[35] *Johnston*, 265 F.3d at 184 (quoting Fed. R. Civ. P. 23(a)(2)).
[36] *Id.* (brackets and internal quotation marks omitted).
[37] *Id.*
[38] *Id.* (brackets, ellipsis, and internal quotation marks omitted).

factual differences."[39] "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals."[40] Therefore, a proper assessment of typicality will

> include three distinct, though related, concerns: (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.[41]

As to commonality, the central legal questions that will be dispositive of Gair's claim are whether: (1) the WARN Act applies to the putative class members; (2) Shop-Vac/Great Star provided sufficient notice prior to the termination of the affected employees; and (3) any exceptions to the WARN Act's notice requirements apply.[42] These dispositive legal questions are equally applicable to all proposed class members. Because Gair "share[s] at least one question of fact or law with the grievances of the prospective class,"[43] commonality is met.

Similarly, as to typicality, the legal theory advanced—that Shop-Vac/Great Star closed their facilities without providing adequate legal notice as required by the

---

[39] *Id.* (internal quotation marks omitted).

[40] *Barnes*, 161 F.3d at 141.

[41] *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 599 (3d Cir. 2009).

[42] *See* 29 U.S.C. § 2102 (setting forth WARN Act notice requirements and exceptions). *See also In re AE Liquidation, Inc.*, 866 F.3d 515, 523 (3d Cir. 2017) (discussing WARN Act).

[43] *Johnston*, 265 F.3d at 184 (brackets and internal quotation marks omitted).

WARN Act and that no exceptions to the notice period apply—will be the same for each class member, as will the general factual circumstances underlying that theory. The facts of plaintiffs' claims and facts related to any defenses would not vary greatly—if at all—between the putative class members. Moreover, the interests and incentives of Gair would appear to be aligned with the potential class members, as resolution of the major legal issues underlying her claim would likewise largely resolve the claims of the other potential class members.

There is one exception to which Great Star has cited—the question of whether the Arbitration Agreement prohibits this suit by any individuals who signed such an agreement. Gair indisputably did not sign such an agreement, and therefore this defense would not apply to her. The critical issue then is whether Gair is "subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation."[44] The Arbitration Agreement does not preclude a finding of typicality, however, as such a defense does not apply to Gair.[45]

Even if the defense would impede a finding of typicality and even if the Arbitration Agreement may inhibit a finding that the interests and incentives of Gair are aligned with the potential class members, Gair asserts that Rachael Berry is willing to act as representative of a subclass of individuals who signed the

---

[44] *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 599.

[45] *See id.* ("the *class representative* must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation" (emphasis added)).

Arbitration Agreement.[46] Gair has submitted a declaration by Berry in which Berry states that she was one of the individuals terminated by Shop-Vac on September 15, 2020, and who was then rehired by Great Star and signed the Arbitration Agreement.[47] It would seem beyond doubt that Berry's interests as a representative of a subclass of individuals who are potentially subject to the Arbitration Agreement are in alignment with all other class members who signed the Arbitration Agreement. Berry would have the same incentives as Gair to argue that Great Star violated the requirements of the WARN Act, and would additionally have the same incentives as the subclass to argue that the Arbitration Agreement does not prohibit the subclass members from pursuing this action.

In sum, both Gair and Berry's claims are typical of those of the class as a whole, and Berry's interests with respect to any arbitration issues are typical of a subclass of individuals who signed the Arbitration Agreement. Because Gair (and Berry) meet all three concerns implicated by typicality, the Court finds that they have satisfied this requirement of Rule 23.[48]

---

[46] Doc. 69 at 2-4.

[47] Doc. 69-1.

[48] *See, e.g., Swede v. Wood-Mode, Inc.*, No. 4:19-CV-00845, 2019 WL 6771742, at *2 (M.D. Pa. Dec. 12, 2019) (noting that "'[t]he commonality and typicality requirements are fairly easily met in an action brought under the WARN Act'" (quoting *Cashman v. Dolce International/Hartford, Inc.*, 225 F.R.D. 73, 92 (D. Conn. 2004)).

### 3.    Adequacy of Representation

Lastly, under Rule 23(a) "class representatives must 'fairly and adequately protect the interests of the class.'"[49] "In analyzing this criteria, the court must determine whether the representatives' interests conflict with those of the class and whether the class attorney is capable of representing the class."[50]

It is apparent that Gair and Berry's interests adequately align with those of the potential class. The core of their case revolves around the question of whether Shop-Vac/Great Star improperly failed to give notice under the WARN Act. Answering that question will largely be dispositive of any other potential class members' claims. Further, the question of whether the Arbitration Agreement prohibits Berry from engaging in this litigation will likewise answer that question for any subclass members, meaning that the interests are adequately aligned here.[51]

It further appears to the Court, and Great Star does not argue to the contrary, that Gair's attorneys are capable of adequately representing the class. Those attorneys are part of a law firm that is dedicated solely "to representing employees affected by mass layoffs and shutdowns" and have collectively spent decades

---

[49]  *Johnston*, 265 F.3d at 185 (quoting Fed. R. Civ. P. 23(a)(4)).

[50]  *Id.*

[51]  *See Swede*, 2019 WL 6771742, at *3 (holding that "[b]ecause the representatives have the same claim as the class members, their claims do not conflict with those of the class" (citing *Johnston v HBO Film Management, Inc.*, 265 F3d 178, 185 (3d Cir. 2001)).

litigating WARN Act cases throughout the nation.[52] Consequently, all requirements of Rule 23(a) are met.

## B.     Rule 23(b)(3) Requirements

Having concluded that the requirements of Rule 23(a) have been met, the Court must assess whether Gair has satisfied the requirements of Rule 23(b)(3). Under Rule 23(b)(3), class certification is appropriate if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[53]

Any analysis under Rule 23(b)(3) "calls upon courts to give careful scrutiny to the relation between common and individual questions in a case."[54] "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof."[55]

### 1.     Predominance

As to the first requirement of Rule 23(b)(3), "[t]he predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or

---

[52]   Doc. 48-2 at 4-13.
[53]   Fed. R. Civ. P. 23(b)(3).
[54]   *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).
[55]   *Id.* (brackets and internal quotation marks omitted).

important than the non-common, aggregation-defeating, individual issues."[56] The

United States Supreme Court has emphasized that:

> When one or more of the central issues in the action are common to the
> class and can be said to predominate, the action may be considered
> proper under Rule 23(b)(3) even though other important matters will
> have to be tried separately, such as damages or some affirmative
> defenses peculiar to some individual class members.[57]

The Court finds that Gair has established predominance, as a single issue is

"more prevalent or important than the non-common, aggregation-defeating,

individual issues."[58] Here, the proposed class includes only those who worked for

Shop-Vac, were terminated as part of a mass layoff, and allegedly possessed the

same rights under the WARN Act. Answering the question of whether those

employees were protected by the WARN Act and whether Shop-Vac/Great Star

violated the WARN Act will be largely dispositive of every potential class member's

claims. The only additional issue is whether members of the proposed subclass are

bound by the Arbitration Agreement and therefore cannot bring claims in this action;

that issue will, however, be common to all subclass members.

There will certainly be individual questions in this matter, including the

question of damages and, perhaps, "some affirmative defenses peculiar to some

---

[56]   *Id.* (internal quotation marks omitted).
[57]   *Id.* (internal quotation marks omitted).
[58]   *Id.* (internal quotation marks omitted).

individual class members."[59] However, common questions clearly predominate over those individual questions, and the first prong of Rule 23(b)(3) is satisfied.

## 2. Superiority

Finally, the Court concludes that Gair has also established that class certification is superior to other available methods to adjudicate the issue. Four considerations are relevant to the Court's analysis:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.[60]

First, as Gair points out, many individuals may have relatively small claim amounts, meaning that they would likely be unable to easily pursue litigation outside of the class litigation context,[61] while certifying a class would "aggregat[e] the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor."[62]

Second, Great Star has not presented evidence that any of the putative class members have instituted litigation regarding reimbursement for personal injury recoveries. As the Third Circuit has previously noted, "a small number of individual

---

[59]  *Id.*

[60]  Fed. R. Civ. P. 23(b)(3).

[61]  Doc. 48 at 15. Although some potential class members may have larger claims, those individuals may opt out of a class action, if they wish.

[62]  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

suits against defendants arising from the [challenged actions] indicat[es] a lack of interest in individual prosecution," which militates in favor of finding superiority.[63]

Third, there is some benefit to be gained by certifying the class, as the Court would apply only the WARN Act, which would be uniform among the class members. Moreover, there would likely be few issues in managing the class action, given that largely the same evidence will satisfy much of the burden of proof in this matter.

Lastly, as this Court has previously noted in a different WARN Act matter:

> This case involves approximately [four] hundred claimants with relatively low dollar-value claims. Declining to certify the class may result in a flood of litigation or, perhaps more likely, many of the claims not being brought. It would also create a risk of inconsistent judgments. On the other side, the size and clear definition of this class suggest that this should not be an unusually difficult class to manage.[64]

Given these facts, the Court concludes that Gair meets the second prong of Rule 23(b)(3) and, consequently, has satisfied the requirements of Rule 23 as a whole.

---

[63] *In re Cmty. Bank of N. Va.*, 418 F.3d at 309.
[64] *Swede*, 2019 WL 6771742, at *3.

## III.    CONCLUSION

For the foregoing reasons, the Court concludes that certification of the proposed class and subclass is appropriate. Consequently, Gair's motion for class certification will be granted.

An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge