# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CANDANCE GAIR, *on behalf of herself and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>GREAT STAR TOOLS USA, INC.<br><br>Defendant. | Case No.  4:21-cv-00976 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS RACHAEL BERRY'S CLAIMS WITHOUT PREJUDICE

**TABLE OF CONTENTS**

PAGE

I.    INTRODUCTION ...........................................................................2

II.   FACTUAL BACKGROUND............................................................2

    A.   Ms. Berry Entered A Contract To Arbitrate Claims Against
        Great Star..............................................................................2

    B.   On September 24, 2023, Ms. Berry Became A Named-Plaintiff
        In A Lawsuit Against Great Star ..........................................4

III.  ARGUMENT ...............................................................................5

    A.   The Federal Arbitration Act Applies, Favors Arbitration, And
        Requires The Court To Ensure An Expeditious And Summary
        Hearing ................................................................................6

        1.   The FAA Applies To The Agreement Because It
             Involves Commerce And Says That The FAA Applies............6

        2.   The FAA Requires The Court To Ensure An Expeditious
             And Summary Hearing, With The Restricted Inquiry Into
             Whether The Parties Agreed To Arbitrate ................................9

    B.   The Agreement Is Valid And The Court Must Enforce It Under
        The FAA...............................................................................13

        1.   A Valid Agreement To Arbitrate Exists ..................................14

        2.    Ms. Berry's Claims Fall Under The Scope Of The
             Agreement ..............................................................................16

    D.   The Court Should Dismiss Ms. Berry's Claims Against Great
        Star......................................................................................17

IV.   CONCLUSION ...........................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
  513 U.S. 265 (1995)...................................................................................6

*AT&T Mobility, LLC v. Concepcion*,
  563 U.S. 333 (2011)................................................................................7, 8

*Blair v. Scott Specialty Gases*,
  283 F.3d 595 (3d Cir. 2002) ................................................................*passim*

*Century Indem. Co. v. Certain Underwriters at Lloyd's, London*,
  584 F. 3d 513 (3d Cir. 2009) ...............................................................14

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105 (2001)................................................................................7, 8

*Citizens Bank v. Alafabco, Inc.*,
  539 U.S. 52 (2003)...................................................................................6

*Direct TV, Inc. v. Imburgia*,
  136 S. Ct. 463 (2015)..............................................................................8

*Ellin v. Empire Today, LLC*,
  No. 11-2312, 2011 WL 3792754 (E.D. Pa. Aug. 24, 2011).......................12, 13

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018)..........................................................................8, 16

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995)................................................................................14

*Gedid v. Huntington Nat'l Bank*,
  No. 11-1000, 2012 WL 691637 (W.D. Pa. Feb. 10, 2012) .................................17

*Glover v. Darway Elder Care Rehab Ctr.*,
  No. 4:13-cv-1874, 2014 U.S. Dist. LEXIS 31380 (M.D. Pa. Feb. 4,
  2014) .......................................................................................................12

*Guidotti v. Legal Helpers Debt Resolution, LLC*,
  716 F.3d 764 (3d Cir. 2013) ...............................................................11

*Healthcare Services Group, Inc. v. Fay*,
  No. 13-0066, 2015 WL 5996940 (E.D. Pa. Oct. 14, 2015) .................10

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) .............................................................................13

*Hutt v. Expressbet*,
  No. 20-494, 2020 U.S. Dist. LEXIS 93899 (E.D. Pa. May 28,
  2020) ...................................................................................................12

*Jones v. Judge Technical Servs. Inc.*,
  No. 11- 6910, 2014 WL 3887733 (E.D. Pa. Aug. 7, 2014) ................12

*Kaneff v. Del. Title Loans, Inc.*,
  587 F.3d 616 (3d Cir. 2009) ...............................................................11

*Marotta v. Toll Brothers, Inc.*,
  No. 09-2328, 2010 WL 744174 (E.D. Pa. Mar. 3, 2010) ...................15

*Martin v. Delaware Title Loans, Inc.*,
  No. 08-3322, 2008 WL 4443021 (E.D. Pa. Oct. 1, 2008) ..................11

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995) ...............................................................................2

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) .........................................................................12, 16

*Palcko v. Airborne Express, Inc.*,
  372 F.3d 588 (3d Cir. 2004) ...............................................................11

*Perry v. Thomas*,
  482 U.S. 483 (1987) ..............................................................................8

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967) ............................................................................13

*Rent-A-Center, W, Inc. v. Jackson*,
  561 U.S. 63 (2010) ..........................................................9, 10, 11, 12

*Scott v. CVS*,
    No. 22-3314, 2023 U.S. App. LEXIS 11900 (3d Cir. 2023)................................7

*Seus v. John Nuveen & Co., Inc.*,
    146 F.3d 175 (3d Cir. 1998) ..............................................................................17

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960)............................................................................................16

## I.    INTRODUCTION

Defendant Great Star Tools USA, Inc. ("Great Star") moves to dismiss Plaintiff Rachael Berry from this lawsuit.

The United States Supreme Court requires courts to enforce private arbitration agreements according to their terms under the Federal Arbitration Act ("FAA".)[1] Ms. Berry agreed to arbitrate most claims, including those under the Worker Adjustment and Retraining Notification Act ("WARN"), against Great Star, waiving her right to sue in this Court. Despite that, Ms. Berry is now a named Plaintiff and seeks to recover against Great Star under WARN. Because Ms. Berry entered a valid arbitration contract and her WARN claims fall under that contract, the Court should dismiss her from this case without prejudice.

## II.   FACTUAL BACKGROUND

### A.    Ms. Berry Entered A Contract To Arbitrate Claims Against Great Star

On December 24, 2020, Great Star acquired the assets of Shop-Vac Corporation n/k/a SV Wind Down Corporation ("Shop-Vac"). (Declaration of Melissa Karlovitch ("Decl."), attached hereto as Exhibit ("Exh.") A, ¶ 2.) Many individuals who formerly worked for Shop-Vac Corporation ("Shop-Vac") applied

---

[1] *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995).

for positions with Great Star.  (*Id.* at ¶ 4.)  Plaintiff Rachael Berry was one of them. (*Id.*)

Great Star required job applicants to sign a written acknowledgment form agreeing to Great Star's Dispute Resolution Policy, effective December 2020.  (*Id.* at ¶ 5.)  On December 30, 2020, Ms. Berry signed an acknowledgment form, which stated, "I acknowledge receipt of the Company Dispute Resolution Policy and agree to bound by its terms."  (*Id.*, ¶ 6.)  On June 15, 2021, Ms. Berry applied for a Cost Accountant position with Great Star at the Williamsport, Pennsylvania facility.  (*Id.* at ¶ 7.)  Great Star hired Ms. Berry that same day.   (*Id.* at ¶ 8.)

Great Star implemented a second Company Dispute Resolution Policy ("CDRP"), effective January 2023. (*Id.* at ¶ 9.)  On May 31, 2023, Ms. Berry signed a CDRP Acknowledgment form agreeing to be bound by Great Star's Dispute Resolution Policy, effective January 2023. (*Id.* at ¶ 10, Exh. 1, Berry CDRP Acknowledgment Form ("Acknowledgment").)  The CDRP states this:

> This Policy, which is a condition of the application process and of continued employment with the Company, is binding upon both the Company and the teammate. Under this Policy, all covered claims and disputes between the Company and the teammate that are not resolved through either the Company's Open-Door Policy or other informal or human resource channels, shall be resolved through mediation and, if necessary, binding arbitration. The mediation and arbitration will be conducted by an independent, respected, and neutral third party, the American Arbitration Association.

3

(*Id.* at ¶ 11, Exh. 2, Great Star's Company Dispute Resolution Policy, effective January 2023 ("CDRP"), ¶ 3.)

The covered claims under the CDRP include claims for "wages or other compensation due" and "violation[s] of federal, state, or other governmental law, statute, regulation or ordinance." (*Id.*, Exh. 2, CDRP, at ¶ 4.) Great Star and the employees also "agree to be bound by those laws best promoting the enforceability of mediation and arbitration agreements, including the Federal Arbitration Act . . ." (*Id.*) The CDRP also explains, "the terms of this Policy shall be construed and enforced in accordance with the Federal Arbitration Act, which is codified at 9 U.S.C. § 1 et seq." (*Id.* at ¶ 34.) Further, employees agree not to "assert class action or representation actions claims under the Policy; each shall only submit their own, individual claims under this Policy and will not seek to represent the interest of any other person or entity." (*Id.*, Exh. 2, CDRP, ¶ 7.) The CDRP says the American Arbitration Association's ("AAA") Employment Dispute Resolution Rules apply to the arbitration proceedings and that Great Star will pay the arbitration administrative fees. (*Id.*, Exh. 2, CDRP, ¶ 10.)

**B.     On September 24, 2023, Ms. Berry Became A Named-Plaintiff In A Lawsuit Against Great Star**

On May 28, 2021, Plaintiff Candice Gair sued Shop-Vac Corporation ("Shop-Vac"), alleging violations of the WARN Act. (ECF 1.) On February 15, 2022, Ms. Gair filed an Amended Complaint, adding Great Star as a defendant, and asserting

that the company is Shop-Vac's successor and, thus, liable for Shop-Vac's failure to provide Ms. Gair Notice under WARN.  (ECF 21.)  On February 17, 2023, Ms. Gair and Shop-Vac jointly moved to dismiss Shop-Vac from the case, and on March 27, 2023, the Court granted the Motion.  (ECF 52, 56.)

On January 24, 2023, Ms. Gair moved to certify a class.  (ECF 47.)  On July 20, 2023, Great Star filed an Opposition to Ms. Gair's Motion for Class Certification, arguing Ms. Gair could not meet Rule 23(a)'s requirement for certification because her claims and defenses were not typical of the individuals bound by the CDRP and she could not adequately represent them.  (ECF 66.)  On September 14, 2023, the Court granted Ms. Gair's Motion, certifying Ms. Gair's proposed class and adding a subclass of individuals who signed Great Star's CDRP.  (ECF 73.)  The Court added Ms. Berry as a named Plaintiff to Ms. Gair's lawsuit and certified the subclass with Ms. Berry as the subclass representative.  (*Id.*)  Great Star moves to dismiss Ms. Berry's claims against Great Star to individual arbitration under the CDRP.

## III.   ARGUMENT

Ms. Berry agreed to arbitrate her claims against Great Star.  This Court should grant Defendant's Motion and dismiss Ms. Berry from this lawsuit because (1) there

is a strong federal policy favoring arbitration; (2) a valid Agreement[2] to arbitrate exists; and (3) Ms. Berry's claims fall under the Agreement.

**A.  The Federal Arbitration Act Applies, Favors Arbitration, And Requires The Court To Ensure An Expeditious And Summary Hearing**

**1.  The FAA Applies To The Agreement Because It Involves Commerce And Says That The FAA Applies**

The Federal Arbitration Act ("FAA") applies to the Agreement because the Agreement involves commerce and states that the statue applies to the Agreement. Therefore, this Court is bound by the FAA's strong policy favoring arbitration.

The FAA applies to contracts evidencing a transaction "involving commerce." *See* 9 U.S.C. § 2.  The FAA's term "involving commerce" is interpreted broadly.  *See, e.g., Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (finding requisite commerce for FAA coverage even when individual transaction did not have substantial effect on commerce).  The FAA defines "commerce" as "commerce among the several states."  9 U.S.C. § 1.  For the FAA to apply, the transaction that the contract shows need only *affect* interstate commerce.  *Allied-Bruce Terminix*

---

[2] Great Star uses the term "Agreement" to refer to Great Star's CDRP (Exh. A, Decl., ¶ 11 Exh. 2, CDRP) and Ms. Berry's written acknowledgement to be bound by the CDRP (Exh. A, Decl., ¶ 10,  Exh. 1, Acknowledgement).

*Cos., Inc. v. Dobson,* 513 U.S. 265, 277 (1995).  The United States Supreme Court has held that employment agreements like the one here sufficiently affect commerce for the FAA to apply.  *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109, 119 (2001).   Beyond that, the Agreement states that the FAA applies, first in paragraph no. 4 (*see* Exh. A, Decl., ¶ 11, Exh. 2, CDRP, at ¶ 4) ("the Company and the teammate agree to be bound by those laws best promoting the enforceability of mediation and arbitration agreements, including the Federal Arbitration Act . . ."), and then again in paragraph no. 34. (*See Id.* at ¶ 34) ("The Company is a multi-state business engaged in transactions involving interstate commerce and this Policy evidences a transaction involving such interstate commerce. Accordingly, the terms of this Policy shall be construed and enforced in accordance with the Federal Arbitration Act, which is codified at 9 U.S.C. § 1 et seq.").  *See Scott v. CVS*, No. 22-3314, 2023 U.S. App. LEXIS 11900, at * 3 (3d Cir. 2023) (dismissing claim because of the plaintiff's arbitration agreement and explaining "[b]y the term of the arbitration agreement, the FAA governs.")  The FAA applies to this Agreement.

Because the FAA applies, this Court is guided by the strong policy favoring arbitration.  The United States Supreme Court has interpreted the FAA to declare a "liberal policy favoring the enforcement of arbitration."  *AT&T Mobility, LLC v.*

*Concepcion*, 563 U.S. 333, 339 (2011) (citing 9 U.S.C. § 2) ("[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."); *see also Perry v. Thomas*, 482 U.S. 483, 489 (1987) (explaining FAA not only places arbitration agreements on equal footing with other contracts, but amounts to "congressional declaration of a liberal federal policy favoring arbitration agreements." ).[3]  Recognizing that federal policy, the Supreme Court repeatedly has invalidated attacks on the enforceability of employment arbitration programs.  *See, e.g., Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1632 (2018) ("Congress has instructed that arbitration agreements like those before us must be enforced as written."); *Circuit City*, 532 U.S. at 122-123 (enforcing arbitration agreement signed during employee's application process regarding claims brought under California's

---

[3] *See also Direct TV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) ("The Federal Arbitration Act is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act")

anti-discrimination statute).[4]   Thus, the strong federal policy favoring arbitration guides this Court's inquiry.

> **2.      The FAA Requires The Court To Ensure An Expeditious And Summary Hearing, With The Restricted Inquiry Into Whether The Parties Agreed To Arbitrate**

After it acknowledges that the FAA applies, the Court must choose a procedural mechanism.  The Court should decide this Motion under §§ 3 and 4 of the FAA, without reference to the Federal Rules of Civil Procedure.  But even if the Court construes Great Star's Motion under the Federal Rules of Civil Procedure, this Court must ensure an expeditious and summary ruling and restrict its inquiry to the issues relevant to whether the parties agreed to arbitrate.

Many federal statutes create substantive rights, and default to the Rules of Civil Procedure to provide a procedural framework for those rights.  The FAA is different.  Section 2 of the FAA creates a substantive right to arbitration, and §§ 3 and 4 of the FAA, "establish[] procedures by which federal courts implement § 2's substantive rule." *Rent-A-Center, W, Inc. v. Jackson*, 561 U.S. 63, 68 (2010).  Therefore, in Great Star's view, district courts must decide motions to dismiss in

_____

accordance with an arbitration agreement under §§ 3 and 4 of the FAA, without reference to the Federal Rules of Civil Procedure.

In *Blair v. Scott Specialty Gases*, 283 F.3d 595, 598 (3d Cir. 2002), a panel of the Third Circuit seemingly agreed with that approach. *Blair* was a Title VII case, involving a mandatory arbitration provision between the defendant and the plaintiff. *Id.* The defendant filed a "motion to dismiss based on the arbitration agreement." *Id.* Initially, the district court construed the motion as a motion for summary judgment under Federal Rule of Civil Procedure 56, granted the motion, and dismissed the action with prejudice. *See id.* On reconsideration, the district court "modified the order to dismiss the case without prejudice pursuant to 9 U.S.C. § 4 and ordered the parties to arbitrate their claims as directed by the arbitration agreement." *Id.* Although the Third Circuit eventually reversed and remanded so the district court could further consider the plaintiff's argument that the arbitration agreement was unenforceable because of its fee-sharing provision, the Third Circuit did not object to the district court's decision to adjudicate the motion under 9 U.S.C. § 4. Reading *Blair* with Supreme Court's decision eight years later in *Rent-A-Center*, yields the conclusion that district courts must decide motions to dismiss without prejudice to arbitration under §§ 3 and 4 of the FAA. *Cf. Healthcare*

*Services Group, Inc. v. Fay*, No. 13-0066, 2015 WL 5996940, at **1-3 (E.D. Pa. Oct. 14, 2015) (Bartle, J.) (adjudicating motion to compel arbitration solely under the FAA's procedures, without reference to the Rules of Civil Procedure); *Martin v. Delaware Title Loans, Inc.*, No. 08-3322, 2008 WL 4443021, at **3-5 (E.D. Pa. Oct. 1, 2008) (same).

However, subsequent Third Circuit panel opinions of have rendered that conclusion less clear.  In *Palcko v. Airborne Express, Inc*., 372 F.3d 588, 597 (3d Cir. 2004), the panel invoked cases that "support the traditional practice of treating a motion to compel arbitration as a motion to dismiss for failure to state a claim upon which relief can be granted," under Rule 12(b)(6).  In *Kaneff v. Del. Title Loans, Inc*., 587 F.3d 616, 620 (3d Cir. 2009), another panel concluded that "[a] district court decides a motion to compel arbitration under the same standard it applies to a motion for summary judgment."  In *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 771-76 (3d Cir. 2013), yet another panel attempted to harmonize the latter two approaches.  But the *Guidotti* panel did not address whether *Rent-A-Center* or *Blair* stands for the proposition that courts must decide motions to dismiss with an arbitration agreement under §§ 3 and 4 of the FAA, as opposed to a Rule of Civil Procedure.

In Great Star's view, *Rent-A-Center* and *Blair* require courts to decide motions to dismiss in accordance with an arbitration agreement under §§ 3 and 4 of the FAA, without reference to the Federal Rules of Civil Procedure. To the extent that panel opinions decided after *Blair* suggest otherwise, it is the Supreme Court's opinion in *Rent-A-Center* and the earliest panel opinion, *Blair*, that carry the day. Still, Great Star acknowledges there is room for a difference of opinion on this subject, and that district judges in the Third Circuit continue to follow other approaches.[5]

Regardless of the Court's favored procedural mechanism, the Court must ensure an expeditious and summary ruling, restricting the inquiry into the factual issues relevant to whether the parties agreed to arbitrate. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 29 (1983) (The FAA demands "a summary and speedy disposition of motions or petitions to enforce arbitration

---

[5] *Compare Jones v. Judge Technical Servs. Inc.*, No. 11- 6910, 2014 WL 3887733, at *2 (E.D. Pa. Aug. 7, 2014) (applying Rule 12(b)(1) to motion to dismiss without prejudice to arbitration), *with Ellin v. Empire Today, LLC*, No. 11-2312, 2011 WL 3792754, at *2 (E.D. Pa. Aug. 24, 2011) (applying summary-judgment standard to motion to compel arbitration), *with Hutt v. Expressbet*, No. 20-494, 2020 U.S. Dist. LEXIS 93899, at * 10 (E.D. Pa. May 28, 2020) (applying 12(b)(6) standard to motion to compel arbitration); *Glover v. Darway Elder Care Rehab Ctr.*, No. 4:13-cv-1874, 2014 U.S. Dist. LEXIS 31380, at * 12 (M.D. Pa. Feb. 4, 2014) (same).

clauses." ); *see also  Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395, 404 (1967) (The FAA's "unmistakably clear congressional purpose [is] that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts.")[6].  Great Star respectfully requests that consideration here.

> **B.      The Agreement Is Valid And The Court Must Enforce It Under The FAA**

The FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement, consistent with the principle that arbitration is a matter of contract.  9 U.S.C. § 4.  In determining whether to compel, the court must decide two gateway issues: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002).  Here, the answer to both questions is yes.

---

[6] In *Ellin*, for example, the Court granted one defendant's motion to compel arbitration less than two months after it was filed, after considering a record limited to the contract, and after focusing only on facts germane to whether the parties agreed to arbitration.  *See Ellin*, 2011 WL 3792754, at ** 5-8.

### 1. A Valid Agreement To Arbitrate Exists

Courts look to the relevant state law of contracts when determining whether the parties entered into a valid and enforceable agreement to arbitrate. *See Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F. 3d 513, 524 (3d Cir. 2009) (*citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Pennsylvania law requires three elements for a valid contract: (1) a mutual manifestation of an intention to be bound by the agreement; (2) terms sufficiently definite to be enforced; and (3) consideration. *Blair*, 283 F.3d at 603. Those elements are present here.

*First*, there is mutual manifestation. The Agreement covers any claim "the Company might have against the teammate . . . [and] any claim under applicable state or federal common or statutory law a teammate might have against the Company. (Exh. A, Decl., ¶ 11, Exh. 2, at ¶ 4.) The Agreement states that the signatore's assent to it is "a condition of the application process and continued employment with the Company [and] is binding upon both the Company and the teammate." (*Id*.) Further showing an intention to be bound, Ms. Berry signed her name under the declaration, "I acknowledge receipt of the Company Dispute

14

Resolution Policy and agree to be bound by its terms." (Exh. A, Decl., ¶ 10 Acknowledgement.)[7]   The Agreement has mutual manifestation.

*Second*, the Agreement's terms are sufficiently definite.  In bold text, the Agreement states, "Claims and Disputes Cover by this Policy," followed by explanations of the types of claims signatories must arbitrate. (Exh. A, Decl., ¶ 11, Exh. 2, CDRP, at ¶ 4.)   The Agreement has other sections in bold text, titled "Applicable Mediation and Arbitration Rules[,]" "Arbitration[,]" and "Fees and Expenses." (*Id*., Exh. 2, CDRP, at ¶¶ 10, 13, 14.)   Those sections explain the American Arbitration Association's (AAA) Employment Dispute Resolution Rules apply, which the signator can view through the listed website or by contacting human resources, and that Great Star will pay the arbitrator's fees and expenses. (*Id*., Exh. 2, CDRP, at ¶ 14.)  As such, the Agreement's terms are sufficiently definite.

*Third*, the Agreement has consideration.  Mutual agreement by the parties to be bound by arbitration is sufficient consideration to create a contract.  *See Blair*, 283 F.3d at 603-04 (stating that "[w]hen both parties have agreed to be bound by arbitration, adequate consideration exists, and the arbitration agreement should be enforced."); *Marotta v. Toll Brothers, Inc.*, No. 09-2328, 2010 WL 744174, at *4 n. 5 (E.D. Pa. Mar. 3, 2010) (*citing Blair*, 283 F.3d at 603).  Moreover, signing the

---

[7] Federal and Pennsylvania state law permits electronic signatures.  *See* 73 P.S. § 2260.303(d); 15 U.S.C. § 7001(a)(1).

Agreement was a condition employment, further demonstrating the consideration element.  *See Epic Sys.*, 138 S. Ct. at 1619 (explaining employers have statutory right to make arbitration condition of employment.)  The Agreement satisfies the contract elements under Pennsylvania law.  There is a valid agreement to arbitrate here.

### 2.    Ms. Berry's Claims Fall Under The Scope Of The Agreement

Ms. Berry's WARN claim falls within the scope of the Agreement.  The FAA requires courts to apply a presumption for arbitrability.  *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.  Courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).  This case is not a close call.  Ms. Berry agreed to arbitrate "any claim under applicable state or federal common or statutory law a teammate might have against the Company including, for example . . . [a] violation of any federal, state, or other governmental law."  (*Id.*, Exh. 2, at ¶ 4.)  Ms. Berry is seeking to recover against Great Star under WARN, a claim under federal law.  Thus, Ms. Berry's claims fall under the scope of the Agreement.

Because The Agreement satisfies both gateway issues (*i.e.*, there is a valid Agreement and Ms. Berry's claims fall under it) the Court must compel arbitration. *See* 9. U.S.C., § 3.

**C.      The Court Should Dismiss Ms. Berry's Claims Against Great Star**

Where, like here, a plaintiff's claims are all arbitrable, a stay is unnecessary, and a court should dismiss the action. *Gedid v. Huntington Nat'l Bank*, No. 11-1000, 2012 WL 691637, at *7 (W.D. Pa. Feb. 10, 2012) (citing *Blair*, 283 F.3d at 600) (if all of the claims are arbitrable, a court may dismiss the entire action); *see also Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 188 (3d Cir. 1998) (affirming dismissal of claims and compelling arbitration); *Flexi Van Leasing, Inc. v. Through Transp. Mut. Ins. Ass'n Ltd.*, 108 Fed. Appx. 35, 38 (3d Cir. 2004) (same).  Here, a stay is unnecessary.  The Agreement precludes Ms. Berry from suing Great Star in this Court.  Her lawsuit is improper, and the Court should dismiss Ms. Berry's claims against Great Star without prejudice.

## IV.   CONCLUSION

Because Great Star and Ms. Berry entered into a valid contract requiring Ms. Berry to arbitrate her claims against Great Star, and this dispute falls within the scope of that contract, the court should dismiss Ms. Berry's claims without prejudice.

Dated: September 29, 2023

*s/ Tanner McCarron*

Matthew J. Hank (PA #386086)
Tanner McCarron (PA #327855)
**LITTLER MENDELSON, P.C.**
Three Parkway
1601 Cherry Street, Suite 1400
Philadelphia, PA  19102.1321
Tel:  267.402.3000
mhank@littler.com
tmccarron@littler.com

Keith James (P43208)
(*admitted pro hac vice*)
**KEITH JAMES, PLLC**
29100 Northwestern Highway
Suite 315
Southfield, MI 480345
Tel:   248.864.8981
James@keithjamespllc.com

*Attorneys for Defendant,*
*Great Star Tools USA, Inc.*

18