IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CANDICE GAIR and RACHEL BERRY, *on behalf of themselves and all others similarly situated*, | No. 4:21-CV-00976 |
| Plaintiffs, | (Chief Judge Brann) |
| v. | |
| GREAT STAR TOOLS USA, INC., | |
| Defendant. | |

MEMORANDUM OPINION

FEBRUARY 21, 2024

In 2020, Shop-Vac Corporation ("Shop-Vac") laid off most of its staff, allegedly without providing adequate legal notice. Candice Gair filed suit on behalf of herself and other Shop-Vac employees and, in 2023, sought to certify a class action against Great Star Tools USA, Inc. ("Great Star"), as the successor to Shop-Vac, for violating the Worker Adjustment and Retraining Notification Act[1] ("WARN Act"). Although Great Star opposed certification largely on the ground that many of the proposed class members had signed arbitration agreements to which Gair was not subject—and she therefore was not an adequate class representative—this Court disagreed, certified the class, and further appointed Rachel Berry as a representative of a subclass of individuals who had signed arbitration agreements.[2]

---

[1] 29 U.S.C. § 2101, *et seq.*
[2] Docs. 72, 73.

Great Star now moves to dismiss Berry from the complaint on the ground that she has signed an arbitration agreement that prohibits her from maintaining suit against Great Star. Although there is no question that Berry signed a binding arbitration agreement, the language of that agreement makes clear that it does not apply retroactively. Because Berry's WARN Act claim arose prior to her signing the arbitration agreement, Great Star's motion must be denied.

## I.   BACKGROUND

### A.   Procedural History

In 2021, Gair, on behalf of herself on all similarly situated individuals, filed a complaint—which was later amended—against Shop-Vac[3] and Great Star, raising a single claim for a violation of the WARN Act.[4] In early 2023, Gair moved to certify a class, which Great Star opposed.[5] This Court certified the class after finding that Gair met all conditions for class certification.[6] Although many of the proposed class members had signed arbitration agreements, the Court found that these agreements were not an impediment to certifying Gair as the class representative because that defense was not applicable to Gair.[7] Nevertheless, the Court appointed Berry, who

---

[3] Shop-Vac Corporation (properly named as SV Wind-Down Corporation) was later dismissed from this action. Doc. 56.
[4] Docs. 1, 21.
[5] Docs. 47, 66.
[6] Docs. 72, 73.
[7] Doc. 72 at 10.

has signed an arbitration agreement, as a class representative to represent a subclass of putative plaintiffs who had signed arbitration agreements with Great Star.[8]

Great Star thereafter filed what it terms a motion to dismiss Berry as a plaintiff in this matter.[9] Great Star argues that Berry should be dismissed from the matter because she signed an arbitration agreement with Great Star and, under the Federal Arbitration Act ("FAA"), her claim must be dismissed since she may only pursue her claim through arbitration.[10]

Plaintiffs respond that Berry should not be dismissed from this action for three reasons.[11] First, they contend that Great Star has waived any arbitration defense by failing to raise it earlier in the proceedings and, even if not waived, any issues surrounding the arbitration agreement must be litigated as to the class, rather than just Berry.[12] Second, Plaintiffs argue that Berry signed her arbitration agreement after her WARN Act claim arose and, because that agreement should not apply retroactively, it does not cover this claim.[13] Third, Plaintiffs assert that a representative claim under the WARN Act may not be waived, even pursuant to an arbitration agreement.[14]

---

[8]  *Id.* at 10-11; Doc. 73.
[9]  Doc. 74.
[10] Doc. 75.
[11] Doc. 79.
[12] *Id.* at 7-11.
[13] *Id.* at 11-13.
[14] *Id.* at 13-21.

Great Star argues that none of Plaintiffs assertions are meritorious.[15] This matter has now been fully briefed and is ripe for disposition. For the following reasons, Great Star's motion will be denied.

**B.    Facts**

Gair and approximately 400 other employees of Shop-Vac were terminated around September 15, 2020 when Shop-Vac's Williamsport, Pennsylvania plant closed without warning.[16] Those employees were terminated without notice, severance pay, or health care coverage.[17] However, in late December 2020, Great Star, a subsidiary of a Chinese company named Hangzhou Great Star Industrial Co., LLC, acquired substantially all of Shop-Vac's assets.[18]

Great Star reopened Shop-Vac's shuttered Williamsport manufacturing plant and rehired hundreds of former Shop-Vac employees.[19] As a condition of applying for employment with Great Star, the rehired individuals were required sign a contract containing a dispute resolution policy that mandated arbitration of any and all disputes between Great Star and its applicants and employees (the "Arbitration Agreement").[20] Gair did not apply for a position with Great Star and, therefore, is not bound by the Arbitration Agreement. It is estimated that 436 Shop-Vac

---

[15]  Doc. 81.
[16]  Doc. 21 ¶¶ 1-2.
[17]  *Id.* ¶ 22.
[18]  *Id.* ¶¶ 25, 26, 29, 30.
[19]  *Id.* ¶¶ 28, 32, 37.
[20]  Doc. 75-1 at 3.

employees were terminated in September 2020, and that 206 employees were subsequently hired by Great Star and signed the Arbitration Agreement, including Berry.[21]

## II. LAW

Although Great Star purports to bring a motion to dismiss, its motion to compel arbitration is more properly considered a motion for partial summary judgment. The United States Court of Appeals for the Third Circuit has explained which standard is applicable when seeking to compel arbitration:

> when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard. In the event that summary judgment is not warranted because the party opposing arbitration can demonstrate, by means of citations to the record, that there is a genuine dispute as to the enforceability of the arbitration clause, the court may then proceed summarily to a trial regarding the making of the arbitration agreement or the failure, neglect, or refusal to perform the same, as Section 4 of the FAA envisions.[22]

---

[21] Doc. 69 at 4 n.3.
[22] *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (brackets, citations, and quotation marks omitted).

Here, the amended complaint does not reference or cite to the Arbitration Agreement.[23] Moreover, the parties have engaged in discovery, and Great Star's motion relies upon extraneous materials—specifically a declaration from a Great Star human resources employee, the Arbitration Agreement, and a document signed by Berry agreeing to be bound by the Arbitration Agreement.[24] Accordingly, the Court will evaluate Great Star's motion under the summary judgment standard.

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[25] Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[26] A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[27] Conversely, to survive summary judgment, a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[28]

---

[23] *See* Doc. 21.
[24] *See* Doc. 75-1.
[25] Fed. R. Civ. P. 56(a).
[26] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010).
[27] *Clark v. Mod. Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993).
[28] *Id*.

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[29] When the movant properly supports its motion, the nonmoving party must then show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[30] The nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[31] Instead, it must "identify those facts of record which would contradict the facts identified by the movant."[32]

In assessing "whether there is evidence upon which a jury can properly proceed to find a verdict for the [nonmoving] party,"[33] the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[34] Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the Court may "consider the fact undisputed for purposes of the motion."[35]

---

[29] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[30] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).
[31] *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).
[32] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (internal quotation marks omitted).
[33] *Liberty Lobby*, 477 U.S. at 252 (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 448 (1871)).
[34] *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).
[35] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).

Finally, although "the court need consider only the cited materials, . . . it may consider other materials in the record."[36]

## III.  ANALYSIS

The Court's analysis of Great Star's motion begins, and ends, with the question of whether Berry's WARN Act claim is covered by the Arbitration Agreement.[37] "With its enactment of the FAA, Congress expressed a strong federal policy in favor of resolving disputes through arbitration."[38] "Even in light of the FAA, however . . . arbitration is strictly a matter of contract. If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so."[39] "Thus, in deciding whether a party may be compelled to arbitrate under the FAA, [courts] first consider (1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that

---

[36]  Fed. R. Civ. P. 56(c)(3).
[37]  Because, as explained below, this Court concludes that Berry's claim is not covered by the Arbitration Agreement, it need not evaluate Plaintiffs' other arguments in opposition to Great Star's motion. However, the Court is highly skeptical that Great Star's conduct has resulted in a waiver of its ability to invoke arbitration. Furthermore, it appears that Plaintiffs' argument that a WARN Act claim may not be waived through an arbitration agreement is without merit. *See, e.g., Coleman v. Optum Inc.*, No. 1:22-CV-05664 (ALC), 2023 WL 6390665, at *8 (S.D.N.Y. Oct. 1, 2023) (rejecting argument that representative action under the WARN Act cannot be waived by an arbitration agreement).
[38]  *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 219 (3d Cir. 2014) (internal quotation marks omitted).
[39]  *Id.* at 219-20 (brackets and internal quotation marks omitted).

valid agreement."[40] "Although there is a presumption in favor of arbitration at step two, it does not apply at step one when deciding whether a valid agreement exists."[41]

Importantly, the presumption of arbitrability means that a claim falls within the scope of an arbitration agreement "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."[42] "Such a presumption is particularly applicable where the [arbitration] clause is . . . broad."[43] When "construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties. In this endeavor, as with any other contract, the parties' intentions control."[44]

There is no dispute that there exists a valid arbitration agreement to which Berry and Great Star are bound. The only real question is whether the Arbitration Agreement applies to Berry's WARN Act claim—i.e., whether "the merits-based dispute in question falls within the scope of that valid agreement."[45] Because Berry's WARN Act claim arose in September 2020, and it was not until December 2020 that she agreed to be bound by the Arbitration Agreement, to answer that question the

---

[40] *Id.* at 220 (internal quotation marks omitted).
[41] *Sapp v. Indus. Action Servs., LLC*, 75 F.4th 205, 212 (3d Cir. 2023) (internal quotation marks omitted).
[42] *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (internal quotation marks omitted).
[43] *Id.*
[44] *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (internal citations and quotation marks omitted).
[45] *Flintkote*, 769 F.3d at 220 (internal quotation marks omitted).

Court must determine whether Great Star and Berry intended for the Arbitration Agreement to apply retroactively to disputes that arose prior to the execution of the Arbitration Agreement. In answering that question, the Court is guided by the well-established principle that "[i]f the parties intend retroactive application, the arbitration agreement [generally] includes broad temporal language."[46]

Here, the language of the Arbitration Agreement is insufficiently broad to conclude that the parties intended retroactive effect. To the contrary, the language demonstrates that the agreement was intended to apply only prospectively, such that "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."[47]

The Court starts with the broad language employed by the Arbitration Agreement in defining the claims and disputes that are covered by the agreement. That language provides that the Arbitration Agreement covers, *inter alia*, any dispute or

> claim under applicable state or federal common or statutory law a teammate might have against the Company including, for example, all claims for: wages or other compensation due; breach of any contract; violations of public policy; negligence; intentional torts; any alleged exception to the workers' compensation laws; defamation; -all forms of unlawful discrimination and retaliation (including, but not limited to,

---

[46] *Herzfeld v. 1416 Chancellor, Inc.*, No. CIV.A. 14-4966, 2015 WL 4480829, at *4 (E.D. Pa. July 22, 2015) (collecting cases). *See also Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 650 (6th Cir. 2008) ("where, as here, an arbitration clause is broadly written, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators" (internal quotation marks omitted)).

[47] *AT&T Techs., Inc.*, 475 U.S. at 650 (internal quotation marks omitted).

10

race, color, sex, religion, national origin, disability; marital status or age); denial of fringe benefits; violation of any federal, state, or other governmental law, statute, regulation, or ordinance; and, any other matters arising under common or statutory law.[48]

This language is incredibly broad and contains no temporal limitations. And, if this were the only relevant language, this Court would easily conclude that the parties intended that the Arbitration Agreement apply retroactively. Unfortunately for Great Star, other relevant language within the Arbitration Agreement forecloses such a reading.

The Arbitration Agreement begins by noting that Great Star recognizes "the value of a workplace culture that promotes 'respect for the individual,' a 'speak-up' culture, and diversity and inclusion," and understands "that there will be certain occasions when differences arise between teammates and the Company."[49] The agreement explains that most disputes "are successfully resolved through the Company's Open-Door Policy or informal discussions" but, absent an arbitration agreement, in the "rare instances where informal discussions and the Company's internal procedures do not produce a mutually satisfactory result" litigation would be the only option.[50]

To avoid such litigation, the Arbitration Agreement requires that "all covered claims and disputes between the Company and the teammate that are not resolved

---

[48] Doc. 75-1 at 8.
[49] *Id.*
[50] *Id.*

11

through either the Company's Open-Door Policy or other informal or human resource channels, shall be resolved through mediation and, if necessary, binding arbitration."[51] This language strongly indicates that the agreement is intended to apply only after an employee begins her employment with Great Star, and is intended to apply to disputes that arise through the employer-employee relationship.

This conclusion is reinforced by two other provisions contained within the Arbitration Agreement. First, the Arbitration Agreement contains a sort of administrative exhaustion requirement, and provides that "[i]f a dispute arises between the Company and the teammate that cannot be satisfactorily resolved through the Company's Open Door Policy or other internal human resource channels, the Company and the teammate must first attempt to resolve the dispute through mediation."[52] This implies that an employee must first attempt to resolve any dispute informally, but is then required to pursue mediation with Great Star. Obviously, this can only occur if an individual is actually employed by Great Star at the time of the dispute.

Second, the Arbitration Agreement provides a limitations period for requesting mandatory mediation: any request must be filed within "the time limit imposed by the applicable statute of limitations" for any claimed statutory violation

---

[51] *Id.*
[52] *Id.* at 10.

or, if no such violation is claimed, "within one year after the claim accrued."[53] This limitations period again strongly indicates that the Arbitration Agreement is only intended to apply to disputes arising after its execution. An individual would not know of this limitations period before applying for employment with Great Star and signing the Arbitration Agreement. Were the agreement to apply to the rare dispute—such as the one at issue here—that arises before the formation of an employer-employee relationship and before the execution of the Arbitration Agreement, this limitations period would automatically bar any non-statutory claims that arose one year and one day prior before its execution—this would be an unconscionable result.

All of this language unambiguously demonstrates an intent for the Arbitration Agreement to apply prospectively. Such language is quite similar to language that the United States Court of Appeals for the Sixth Circuit previously examined and determined indicates just such an intent.

In *Russell v. Citigroup, Inc.*, the Sixth Circuit evaluated an arbitration agreement that made "arbitration the required and exclusive forum for the resolution of all employment-related disputes" that "arise between [an employee] and Citi, its predecessors, successors and assigns, its current and former parents, subsidiaries, and affiliates, and its and their current and former officers, directors, employees, and

---

[53]  *Id.* at 11.

agents."[54] That court noted that the "use of the present-tense 'arise,' rather than the past-tense 'arose' or present-perfect 'have arisen,' suggests that the contract governs only disputes that begin—that arise—in the present or future" since "[t]he present tense usually does not refer to the past."[55]

This conclusion was reinforced by the language contained within the agreement's statement of intent which "add[ed] force to what the conjugation of this verb suggests."[56] The statement of intent explained that Citigroup "values each of its employees and looks forward to good relations with, and among, all of its employees. Occasionally, however, disagreements may arise between an individual employee and Citi . . . Citi believes that the resolution of such disagreements will be best accomplished . . . by external arbitration."[57] Language such as "looks forward" and "may arise," the Sixth Circuit noted, "exudes prospectivity," while the word "may" signaled events that had yet to occur.[58] The sum of this language demonstrated that the parties did not intend for the arbitration agreement to apply retroactively and, because the events complained of occurred prior to that agreement's execution, the Sixth Circuit concluded that the arbitration agreement did not bar the plaintiff's suit.[59]

---

[54] 748 F.3d 677, 679 (6th Cir. 2014).
[55] *Id.*
[56] *Id.*
[57] *Id.* at 679-80.
[58] *Id.* at 680.
[59] *Id.* at 680-82.

Here too, the language used in the Arbitration Agreement "exudes prospectivity."[60] The Arbitration Agreement's description of its purpose recognizes that "there will be certain occasions" when disputes "arise," although most employer-employee disputes "are successfully resolved" informally.[61] It explains that disputes "that are not resolved" informally must be resolved through mediation and arbitration,[62] and provides exhaustion requirements and time limitations for seeking mediation that realistically could only apply after an individual signs the Arbitration Agreement.[63] As in *Russell*, not only does the conjugation of the verb "arise" suggest that the agreement was intended to apply prospectively, but the Arbitration Agreement is replete with other language indicating that it is intended to address situations that arise during or after—and not prior to—employment and execution of the Arbitration Agreement.

In sum, the plain language of the Arbitration Agreement leaves no doubt as to the intent of the parties in signing said agreement.[64] Rather, the Arbitration

---

[60] *Id.* at 680.
[61] Doc. 75-1 at 8.
[62] *Id.*
[63] *Id.* at 10-11.
[64] Moreover, the Arbitration Agreement expressly provides that it "applies to all current and former workers, applicants for employment or any other person who expressly agrees to be bound by the terms of the policy." *Id.* at 8 n.1. This contemplates that the agreement applies only to (1) past or present employees, (2) applicants, or (3) anyone else who has signed the Arbitration Agreement. In that sense, it is similar to the agreement in *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391 (2d Cir. 2015). There, the United States Court of Appeals for the Second Circuit rejected the argument that an arbitration clause applied retroactively to claims that arose pre-employment, given that the arbitration clause was temporally limited by language specifically referring to "employment." *Id.* at 398. Since the plaintiffs' claim arose before they were employees of the defendant, the arbitration clause did not cover that claim.

Agreement provides "positive assurance that the arbitration clause is not susceptible of an interpretation that covers" Berry's WARN Act claim.[65] Great Star's motion is therefore without merit.

## IV. CONCLUSION

For the reasons stated herein, Great Star's putative motion for partial summary judgment is denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

*Id.* Here too, the Arbitration Agreement temporally limits its application to three categories of individuals with specified relationships with Great Star, and Berry's claim arose before she was employed by, or had applied for employment with, Great Star. Although Berry was previously employed by Shop-Vac, she did not apply for employment with Great Star and sign the Arbitration Agreement until December 2020, after her WARN Act claim arose. Accordingly, the Arbitration Agreement does not cover that claim.

[65] *AT&T Techs., Inc. v*, 475 U.S. at 650 (internal quotation marks omitted).